UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CIVIL ACTION NO.:  9:14-cv-81046

OCWEN LOAN SERVICING, LLC,          )
                                    )
Plaintiff,                          )
                                    )
v.                                  )
                                    )
CONNOLLY, GEANEY, ABLITT & WILLARD, P.C.,   )
a Rhode Island Professional Corporation, f/k/a ABLITT   )
SCOFIELD, P.C., JOHN CONNOLLY, JR., as an individual,   )
KEVIN P. GEANEY, as an individual, STEVEN ABLITT,   )
as an individual, RACHELLE WILLARD, as an individual,   )
ROBERT FEIGE, as an individual, LAWRENCE SCOFIELD,   )
as an individual, and DURHAM COMMERCIAL CAPITAL   )
CORP., a New York Corporation,      )
                                    )
Defendants                          )

FILED BY _____ D.C.

NOV 1 2 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

**MEMORANDUM OF DEFENDANT JOHN CONNOLLY, JR. IN
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant John Connolly, Jr. ("Mr. Connolly"), submits the present memorandum in

reply to plaintiff, Ocwen Loan Servicing, LLC's ("Ocwen"), opposition to Mr. Connolly's

Motion to Dismiss.  As stated in the motion to dismiss, this Court should dismiss the Complaint

of Ocwen on the basis of a lack of personal jurisdiction, improper venue, lack of subject matter

jurisdiction, and lack of diversity.

In the alternative, Mr. Connolly states that this Court must transfer Ocwen's claims to the

District Court of Massachusetts on the basis that Florida is an inconvenient and inappropriate

venue for the claims pleaded by Ocwen against Mr. Connolly.

1

I.   OCWEN CANNOT ESTABLISH DIVERSITY JURISDICTION AS TO MR. CONNOLLY

Mr. Connolly notes that 28 U.S.C. § 1332 requires that in order to find diversity jurisdiction as to Mr. Connolly, Ocwen must demonstrate that the matter in controversy as to Mr. Connolly exceeds "the sum or value of $75,000, exclusive of interest and costs" and that Ocwen and Mr. Connolly are "citizens of different States". In the present case, Mr. Connolly did not participate in the misuse of funds alleged by Ocwen, Mr. Connolly was not aware that any such alleged misuse was occurring, and Mr. Connolly did not receive or grant any alleged bonuses using such funds. Affidavit of John Connolly, Jr. (the "Connolly Affidavit"), ¶ 71. A true and accurate copy of the Connolly Affidavit is attached hereto as "Exhibit A".) Further, Mr. Connolly was neither an officer nor a director of the Firm at any point in time when the alleged misuse of funds is alleged to have occurred. (Connolly Affidavit, ¶ 15.) Therefore, Ocwen cannot satisfy the requirement of a claim against Mr. Connolly exceeding the sum of $75,000.00. Further, Mr. Connolly notes that Ocwen has been formally registered with the Secretary of State of the Commonwealth of Massachusetts since May of 2002, and therefore cannot reasonably be found to be diverse as to Mr. Connolly.

Accordingly, this Court should dismiss the claims pleaded as to Mr. Connolly for failure to satisfy the diversity requirements of 28 U.S.C. § 1332.

II.   THIS COURT LACKS PERSONAL JURISDICTION AS TO MR. CONNOLLY.

A.   The Florida Long-Arm Statute Does Not Provide For Jurisdiction Over Mr. Connolly.

Ocwen has pleaded several claims in its Complaint against Mr. Connolly, as an individual. Ocwen's claims arise out of the alleged performance of legal services in Florida pursuant to a contract between Ocwen and Connolly, Geaney, Ablitt & Willard, P.C. f/k/a Ablitt

Scofield, P.C. (the "Firm")[1].  Mr. Connolly states that the Florida long-arm statue does not provide for jurisdiction over Mr. Connolly as an individual.  Florida's long-arm statute, FLA. STAT. ch. 48.193, provides, in relevant part, the following:

> (1) Any person, whether or not a citizen or resident of this state, who *personally* or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state.
>
> ....
>
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> 1. The defendant was engaged in solicitation or service activities within this state; or
>
> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(Emphasis added.)

With regard to FLA. STAT. ch. 48.193 (1), Mr. Connolly notes that the Florida Courts have stated that "'Personally' means: 'In person; without the intervention of another.'" *Doe v. Thompson*, 620 So. 2d 1004, 1005-6 (1993), citing *The American Heritage Dictionary,* 926 (2d college ed. 1985).  As that relates to FLA. STAT. ch. 48.193 (1)(a), Mr. Connolly once again notes that he has never individually participated in any business in Florida, and he has never

---

[1] Mr. Connolly notes that despite the misleading characterizations by Ocwen, the Firm was a Professional Corporation, and not a "partnership".  (Connolly Affidavit ¶ 25)

represented any client in Florida, including, but not limited to Ocwen.  (Connolly Affidavit, ¶ 2.)

Indeed, Mr. Connolly is not licensed to provide legal services in Florida, and Mr. Connolly has

not provided any legal services, or legal advice to, or for, Ocwen, or any other person or entity in

Florida.  (Connolly Affidavit, ¶ 3 & 35.)  At all times that CGAW represented Ocwen in matters

in the jurisdiction of Florida, the office had a Florida Attorney Manager for escalation of Florida

files.  (Connolly Affidavit, ¶ 70).

     Further, Ocwen has made unwarranted and unsupported assumptions that Mr. Connolly

"managed the firm's financial accounts nationwide, including funds collected from the Florida

office", however in actuality prior to March 2014, Robert Feige was the Chief Financial

Officer/Chief Operating Officer for CGAW and as such Mr. Feige was responsible for all

financial dealings of the firm.  (Connolly Affidavit ¶68.)  At no point, up to and including the

closing of CGAW, did Mr. Connolly have signatory authority regarding CGAW's IOLTA

accounts or any other accounts of the Firm, nor did he have authorization to access those

accounts for any reason.  (Connolly Affidavit ¶ 13.)

     With regard to FLA. STAT. ch. 48.193 (1)(b), while Ocwen states in their opposition "One

would expect Connolly to travel to Florida to conduct business, oversee, and manage the Florida

office", that is simply not the case.  Mr. Connolly states that since he became anan employee of

the Firm he has not been within the state of Florida at any time or for any purpose.  (Connolly

Affidavit, ¶ 7.)

     Additionally, Mr. Connolly states that FLA. STAT. ch. 48.193 (f) cannot provide a

basis for jurisdiction as to Mr. Connolly as Mr. Connolly has never "engaged in

solicitation or service activities within [Florida]" (FLA. STAT. ch. 48.193 (f)(1)), and Mr.

Connolly has not engaged in any activities concerning "[p]roducts, materials, or things

processed, serviced, or manufactured . . . used or consumed within [Florida] in the ordinary course of commerce, trade, or use." (FLA. STAT. ch. 48.193 (f)(1)). (Connolly Affidavit, ¶ 10)

To the extent that Ocwen, may seek to avoid the application of the relevant provisions of FLA. STAT. ch. 48.193 by claiming that Mr. Connolly has engaged in "fraud", legal malpractice, or some other intentional tortious acts, Mr. Connolly states that he has not engaged in any such fraud, did not commit legal malpractice, and did not commit any intentional tort against Ocwen. (Connolly Affidavit, ¶ 11, 12 & 14) Furthis, Mr. Connolly states that he never misappropriated any funds of Ocwen, and never comingled any client and firm money. (Connolly Affidavit, ¶ 12 & 14.) Mr. Connolly also notes that he was not a signatory upon, or controller of, any of the accounts within which Ocwen has alleged funds were misused. (Connolly Affidavit, ¶ 13.) Similarly, Mr. Connolly neither mishandled nor stole any funds from Ocwen, and Mr. Connolly did not provide any salaries and/or bonuses associated in any way with the alleged misuse of Ocwen's funds. (Connolly Affidavit, ¶ 14.) At no time during his tenure at CGAW did Mr. Connolly approve of the bonuses of any member of the firm. If any bonuses had been paid, they would have been approved by Robert Feige. (Connolly Affidavit ¶ 68.)

To the extent that Ocwen has sought to plead any allegations against Mr. Connolly, Mr. Connolly states that those "allegations" consist of mere legal conclusions and conclusions "couched" as factual recitations, without factual support or basis. Mr. Connolly states that such conclusions are not sufficient to maintain Ocwen's claims against Mr. Connolly, and therefore, the present Complaint should be dismissed as to Mr. Connolly. *See*, *B.M. v. Thompson*, 2013 WL 4547344 (M.D. Fla. 2013), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5

B.   General Personal Jurisdiction Over Mr. Connolly By This Court
     Would Be Inappropriate.

Mr. Connolly states that he is not subject to *general* personal jurisdiction in Florida, as he

is a domiciliary of the Commonwealth of Massachusetts. (Connolly Affidavit ¶1.)  Further, Mr.

Connolly is not licensed to provide legal services in Florida, and Mr. Connolly has not provided

any legal services, or legal advice to, or for, Ocwen, or any other person or entity in Florida.

(Connolly Affidavit", ¶ 3 & 35)  Mr. Connolly further notes that he surrendered his shareholder

interest in the Firm and resigned as an officer, director and/or employee of the Firm well before

the filing of Ocwen's Complaint.  (Connolly Affidavit, ¶ 41)  Also, Mr. Connolly has not

otherwise had sufficient "substantial . . . continuous and systematic" contacts with Florida to

support general personal jurisdiction.  (Connolly Affidavit, ¶ 9, 10 & 42.)  *See, Morris v. SSE,*

*Inc.,* 843 F.2d 489 (11th Cir. 1988).   As noted above, Mr. Connolly is not licensed to provide

legal services in Florida, and Mr. Connolly has not provided any legal services, or legal advice

to, or for, Ocwen, or any other person or entity in Florida.  (Connolly Affidavit, ¶ 3 & 35)

Further, at all times that Mr. Connolly was employed with CGAW while it conducted business in

Florida, there was a Florida Licensed managing attorney that oversaw CGAW's Florida work.

(Connolly Affidavit, ¶ 70)  It is Mr. Connolly's understanding that he never served as a contact

for Ocwen for answering any operational questions regarding the Firm, including, but not limited

to, any questions concerning the Firm's Florida office.  (Connolly Affidavit, ¶5.)  Upon

information and belief, Mr. Connolly was never identified as a point of contact on any "contact

list(s)" or escalation matrixes that may have been provided to or by Ocwen.  (Connolly Affidavit,

¶5.)  Also, Mr. Connolly has never performed any default services work for Ocwen in Florida.

(Connolly Affidavit, ¶ 8.)

As Mr. Connolly did not have any continuous or systematic contacts with Florida general jurisdiction over Mr. Connolly is neither warranted nor appropriate.

C.   Specific Personal Jurisdiction Over Mr. Connolly By This Court Would Be Inappropriate.

Mr. Connolly hisstates that this Court cannot exercise *specific* personal jurisdiction over his as to the claims pleaded by Ocwen.  In order to establish specific jurisdiction, a plaintiff must establish that "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities". *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  Ocwen cannot offer proof to support specific personal jurisdiction over his as Mr. Connolly has never performed legal services in Florida, and Mr. Connolly was not a signatory to any agreements between the Firm and Ocwen[2].  Indeed, at the time of the alleged June 2012 formation and execution of an agreement between Ocwen and the Firm, Mr. Connolly had no involvement or connection with the Firm and in no way was involved or had any authority to be involved with the formation and execution of an agreement between the Firm and Ocwen or any of the firm's clients.  (Connolly Affidavit, ¶ 37 & 43.)

In order to find specific personal jurisdiction against a defendant, the plaintiff must establish "some act by which the defendant purposefully availed itself of conducting activities

---

[2]  Mr. Connolly notes that Ocwen's claims arise from an alleged written contract between Ocwen and the Firm.  As those claims are inextricably dependent upon the subject contract, Ocwen's claims sounding in tort cannot stand as "the Florida Supreme Court held that a party cannot recover in tort for economic losses incurred pursuant to the terms of a written contract.  The court reasoned that 'contract principles are more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage.'" *Hoseline, Inc. v. U.S.A. Diversified Products, Inc.*, 40 F.3d 1198, (11th Cir. 1994) citing *Florida Power & Light Company v. Westinghouse Electric Corp.*, 510 So.2d 899 (Fla.1987); *see also, Serina v. Albertson's, Inc.*, 744 F.Supp. 1113 (M.D.Fla.1990)  (economic loss rule bars recovery for intentional tort intertwined with a breach of contract claim).

within the forum state." *Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 833 (11th Cir. 1992). Nevertheless, as noted above, Mr. Connolly has not engaged in <u>any</u> such act to purposefully avail himself of jurisdiction within Florida. (Connolly Affidavit, ¶ 6, 7, 8, 9, 10, 42 & 44.) The "Fourteenth Amendment requires that defendants have 'fair warning' that particular activities may subject them to the jurisdiction of foreign sovereigns" *Id.*, at 833, and in the present case, as set forth above, Mrs. Willard could have had no such fair warning as he did not engage in any act to purposefully avail himself to the jurisdiction of Florida Courts.

Additionally, Mr. Connolly notes that to the extent that the claims pleaded against him are based upon the actions of other persons, which appears to the situation in the present case, it is established that the actions by "a third party cannot create the requisite 'minimum contacts'" to support a finding of personal jurisdiction. *Morris*, 843 F.2d at 492.

Accordingly, Mr. Connolly states that this Court should dismiss the claims pleaded against his for lack of personal jurisdiction.

## II.   THIS COURT SHOULD DISMISS OCWEN'S COMPLAINT AS TO MR. CONNOLLY ON THE BASIS OF IMPROPER VENUE.

28 U.S.C. § 1391 provides, in relevant part, that: "A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .." In the present case, <u>all</u> of the individuals named as defendants are residents of the Commonwealth of Massachusetts, and <u>all</u> of the alleged "events or omissions giving rise to the claim" occurred within the Commonwealth of Massachusetts. (Connolly Affidavit ¶ 45.) Therefore, Florida cannot be found to be the proper venue for the present case under 28 U.S.C. § 1391.

Indeed, 28 U.S.C. 1406(a) provides that "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Accordingly, this Court should dismiss the present case as to Mr. Connolly, or at the very least, this Court should, in the interest of justice, transfer the matter to the Commonwealth of Massachusetts.

III.   EVEN IF THIS COURT WERE TO FIND PERSONAL JURISDICTION AS TO MR. CONNOLLY, WHICH IS DENIED, THIS COURT SHOULD TRANSFER THE MATTER TO THE COMMONWEALTH OF MASSACHUSETTS PURSUANT TO THE STATUTORY CONVENIENCE TRANSFER STATUTE.

Even if, notwithstanding all of the foregoing, a Florida Court seeks to impose personal jurisdiction over Mr. Connolly,  this Court must transfer the subject matter to Massachusetts pursuant to 28 U.S.C. 1404(a).  28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In considering whether to transfer a matter pursuant to 28 U.S.C. § 1404(a), a Court must consider five (5) factors, including:  (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice.  *See Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1136-37 (6th Cir.), *cert. denied,* 502 U.S. 821 (1991).

In the present case, there is not a single factor among the five (5) articulated in *Moses* that favors Florida as the appropriate venue.

Ocwen does business in Massachusetts, and Ocwen has recently submitted itself to the jurisdiction of the U.S. Bankruptcy Court in Boston, Massachusetts with regard to the bankruptcy proceeding that has been commenced concerning the Firm.  Therefore, Ocwen cannot reasonably be permitted to claim that Massachusetts is inconvenient.[3]  Perhaps more importantly, all of the individual defendants, and all of the material witnesses are domiciliaries of the Commonwealth of Massachusetts. (Connolly Affidavit, ¶ 45 & 46)  Those witnesses include, but are not limited to, the following:  Mary Donovan, who was the Firm's in-house book keeper and accountant, and would have personal knowledge of all aspects of the subject bank accounts; Demonic Cedrone, who worked in the Firm's accounting department and would have personal knowledge of the subject bank accounts and the alleged mishandling of funds; Andrea Turnbull, who worked in the Firm's accounting department and would have personal knowledge of the subject bank accounts and the alleged mishandling of funds; and numerous other persons who worked in the firms accounting and billing departments, who would have personal knowledge of the Firm's accounts. (Connolly Affidavit, ¶ 28.)  Further, numerous paralegals and other employees, who actually worked on and managed Ocwen's case files from the Firm's Massachusetts office, including cases concerning Florida, would be necessary witnesses, and all such paralegals and other employees are believed to be domiciliaries of Massachusetts. (Connolly Affidavit, ¶ 48.)  Also, all of the voluminous relevant evidence and sources of proof are located within the Commonwealth of Massachusetts. Those records consist of several hundred "banker's Boxes" worth of documents, and those materials are located in Foxboro,

---

[3]  Mr. Connolly notes that Ocwen is an extremely large entity that is present is many, if not all, jurisdictions within the United States.  Accordingly, any attempt by Ocwen to characterize itself as a regional Florida business would be wholly disingenuous.

Massachusetts[4]. (Connolly Affidavit, ¶ 48&49.) As all of the material witnesses and evidence are within the Commonwealth of Massachusetts, trying the matter in any Court other than the District Court of Massachusetts will be certain to greatly and improperly increase the cost and inconvenience of litigating the present matter for parties and witnesses. (Connolly Affidavit, ¶ 52.) Similarly, there would be extensive practical problems in trying the matter in Florida; thus, litigating the matter in Massachusetts would be far less expensive and more expeditious. (Connolly Affidavit, ¶ 52 & 52)

In light of the issues stated above concerning personal jurisdiction, the interests of justice prohibit the litigation of this matter in Florida. Mr. Connolly further states that he does not presently have the financial means or ability to travel to Florida to participate in litigation in that forum. (Connolly Affidavit, ¶ 54 & 55.) Accordingly, even if this Court were to find personal jurisdiction, and that venue in Florida is appropriate, which is denied, this Court should transfer the present matter to Massachusetts pursuant to 28 U.S.C. 1404(a).

**WHEREFORE**, for the reasons set forth above, Mr. Connolly respectfully requests that this Court dismiss the claims pleaded against him, or in the alternative, requests that this Court transfer the present matter to the District Court located in the Eastern District of the Commonwealth of Massachusetts.

Respectfully submitted,

John Connolly, Jr.
Pro Se
17 Bourbeau Terrace
Newburyport, MA 01950
978-255-2262
john.connolly4@comcast.net

---

[4] The subject records are in the possession of a bankruptcy trustee, who is also located in Massachusetts.

<u>Certificate of Service</u>

I, John Connolly, Jr., hereby certify that on this 10th day of November 2014 I caused the

foregoing to be served by first-class mail upon the following:

D. Brian O'Dell, Esq.
Bradley Arant Boult Cummings, LLP
1819 5th Avenue, North
Birmingham, AL  35203

Robert Feige
46 Cartwright Road
Wellesley, MA 02482

Michael W. Ullman, Esq.
150 East Palmetto Park Road, Suite 700
Boca Raton, FL 33432

Kevin Geaney
174 Judge Street
Lynn, MA 01904

Steven Ablitt
6 Ramsdell Way
Lynnfield, MA  01940

Rachelle D. Willard
19 Plymouth Road
Marlborough, MA

John Connolly, Jr.

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CIVIL ACTION NO.: 9:14-cv-81046

OCWEN LOAN SERVICING, LLC,             )
     Plaintiff,                       )
                                       )
                                       )
v.                                     )
                                       )
CONNOLLY, GEANEY, ABLITT & WILLARD, P.C., )
a Rhode Island Professional Corporation, f/k/a ABLITT )
SCOFIELD, P.C., JOHN CONNOLLY, JR., as an individual, )
KEVIN P. GEANEY, as an individual, STEVEN ABLITT, )
as an individual, RACHELLE WILLARD, as an individual, )
ROBERT FEIGE, as an individual, LAWRENCE SCOFIELD, )
as an individual, and DURHAM COMMERCIAL CAPITAL )
CORP., a New York Corporation,         )
     Defendants                       )

**SUPPLEMENTAL AFFIDAVIT OF JOHN CONNOLLY IN SUPPORT OF REPLY MEMORNADUM TO PLAINTIFF'S OPPOSITION AND SUBSTITUTE AFFIDAVIT OF BYRON GAY TO JOHN CONNOLLY'S MOTION TO DISMISS**

I, John Connolly, Jr. hereby depose on oath and state the following:

     1.     I am a domiciliary of the Commonwealth of Massachusetts with a residential address of 17 Bourbeau Terrace, Newburyport, Massachusetts 01950.

     2     I have never individually participated in any business in Florida, and I have never represented any client in Florida, including, but not limited to Ocwen Loan Servicing LLC ("Ocwen").

     3.     I am not licensed to provide legal services in Florida, and I have not provided any legal services, or legal advice to, or for, Ocwen, or any other person or entity in Florida or relating to any legal matter or action pending in Florida.

1

4.      I have never served as a Firm contact for Ocwen for answering any operational questions regarding the Firm, including, but not limited to, any questions concerning the Firm's Florida office.

5.      I have never been advised by anyone at the Firm or anyone at Ocwen that I was ever identified as a point of contact on any contact list(s) or escalation matrixes that may have been provided to or by Ocwen, and I never participated in any telephone calls and/or conferences with Ocwen regarding any of its legal matters or cases.

6.      I did not manage any case files for Ocwen; did not manage any case files concerning any Florida files for any other clients of the Firm; did not oversee any case files concerning Ocwen and/or any other default services client of the Firm in any jurisdiction and I never traveled to Florida to conduct any business and/or to oversee or manage the Firm's Florida office.

7.      I was never at the Firm's Florida office or anywhere else in the State of Florida at any time for any reason while I was employed by and/or at the Firm.

8.      I have never performed any default services work for Ocwen in Florida, or in any other jurisdiction.

9.      I have not been within the state of Florida since becoming employed by the Firm, and thus could not have "committing a tortious act within this state" of Florida.

10.     I have never engaged in solicitation of business or provision of service activities within Florida and/or for Ocwen in any jurisdiction, and I have not engaged in any activities concerning products, materials, or things processed, serviced, or manufactured, used or consumed within Florida in the ordinary course of commerce, trade, or use.

11.     I have not engaged in any fraud, and I did not commit legal malpractice, and did not commit any intentional tort(s) against Ocwen.

12.     I never misappropriated any funds of Ocwen, and never comingled any client and Firm money.

13.     I was not a signatory upon, or controller of, any of the accounts relative to which Ocwen has alleged funds were comingled, converted and/or misused and/or any other account of the Firm.

14.     I neither mishandled nor stole any funds from Ocwen, and I did not provide any salaries and/or bonuses associated in any way with any funds Ocwen alleges were misused.

15.     I was neither an officer nor director of the Firm until late October of 2014.

16.     My agreement to become president and director of the Firm way my consideration for a business and refinance agreement between the Firm and Mr. and Mrs. Robert Feige to raise sufficient funds to restore any and  all funds alleged by Ocwen to have been misused and/or converted.

17.     I never received any increase is pay, benefits, ownership interest, power and/or authority in the Firm for becoming president and director.

18.     The refinancing transaction which was the consideration for my agreeing to become president and director was never completed.

19.     In April of 2014 I became a minority shareholder in the Firm when I required 5.7% of the issued and outstanding stock in Ablitt/Scofield, P.C. in return for my 94% ownership in Connolly and Geaney, LLC ("C&G"), a law firm which at that time had offices at 545 Salem Street, Wakefield, MA 01950.

3

20.     In November 2012, I was solicited by Mr. Lawrence Scofield who was a longtime friend and colleague and Mr. Robert Feige who I did not know but who was identified and the CEO and CFO of Ablitt/Scofield to bring C&G into A/S to provide a civil litigation department to the existing default services practice of A/S.

21.     Under the express terms of the agreement between C&G and A/S, C&G LLC became a wholly owned subsidiary of the Firm but remained and operated as an LLC serving its own clients and maintaining its own business and IOLTA accounts separate and apart from the Firm.

22.     Under the express terms of the said agreement I remained at the Manager of C&G and C&G continued to provide legal services to C&G's client base.  Neither C&G, I provided any legal services or advice to Ocwen in any jurisdiction at any time.

23.     My employment arrangement expressly excused me from any involvement in the ordinary default services portion of the business of A/S including foreclosures, bankruptcy, eviction and REO.

24.     My employment arrangement also expressly excused me from any management or personnel issues of A/S other than those which directly affected C&G.

25.     Ocwen's use of terms such as law partners is misleading and false.  The Firm was a professional corporation; there were no partners.

26.     In May of 2014 I was asked to get involved with a problem that had developed at A/S when A/S was denied approval by FNMA to provide services to A/S's clients on FNMA related files.

27.     I was told that approval by FNMA would increase the amount of business available to A/S by as much as 40%-50%.

4

28.     I, and others, was asked to lend our names to the Firm name in the hope of FNMA approval.

29.     The change in the Firm name was agreed upon and notice was filed by Mr. Steven Ablitt the President of A/S.

30.     At the time of the discussions regarding the FNMA default services files I owned 5.7 of the 100 shares of stock in A/S, Mr. Kevin Geaney owned 3/10 of a share, Mr. Lawrence Scofield owned 1 share, and Mr. Steven Ablitt owned the remaining 93 shares.

31.     Ultimately the change in name did not resolve the FNMA rejection.

32.     C&G did not relocate to A/S's office in Woburn Massachusetts until the first week in July, 2013.

33.     I never filed, caused to be filed or was aware of the premature filing made by Mr. Robert Feige in Florida in October of 2013 which the plaintiff erroneously describes as my representing to the State of Florida my being an officer of the Firm.

34.     I was never the ultimate decision maker for the Firm in any way, with any client, other than C&G clients, in any jurisdiction.

35.     I have never been admitted to practice law in Florida, and believe it would constitute the unauthorized practice of law for me to appear on behalf of Ocwen, to render advice to Ocwen, to direct any Firm staff involved with Florida based cases and matter and/or to make the "ultimate" decision as the Plaintiff alleges.

37.     I never agreed personally and/or on behalf of C&C to enter into and/or be bound by the Local Counsel Agreement between Ocwen and A/S and notwithstanding the plaintiff's election to use the Firm's new name,

38.     Mr. Byron Gay has seen fit to opine, without any sworn factual support, that Ocwen purportedly "understood" the Massachusetts attorney such as me CGAW.

39.     To the best of my knowledge and memory, I never communicated with or met Mr. Byron Gay and/or any other officer, attorney or representative, known or introduced to me as being employed by or associated with Ocwen, until the 2nd or 3rd week of July, 2014 after the Firm had ceased to provide legal services to Ocwen and the Firms other default services clients.

40.     At the time of my first communication and or contact with anyone who I knew or understood was a representative of Ocwen I was not an employee, officer or director of the Firm.

41.     I surrendered my minority shareholder interest in the Firm and resigned as an officer, director and/or employee of the Firm well before the filing of Ocwen's Complaint.

42.     I have not ever had sufficient "substantial . . . continuous and systematic" contacts with Florida to support general personal jurisdiction.

43.     At the time of the alleged June 2012 formation and execution of an agreement between Ocwen and the Firm, I was not in any way associated with the Firm.

44.     I have not engaged in any act to purposefully avail myself of jurisdiction within Florida.

45      In the present case, all of the individuals named as defendants are residents of the Commonwealth of Massachusetts, and all of the alleged "events or omissions giving rise to the claim" occurred within the Commonwealth of Massachusetts.

46.     All of the individual defendants, and most, if not all, of the material witnesses are domiciliaries of the Commonwealth of Massachusetts.

47.     Those witnesses include, but are not limited to, the following:  Mary Donovan, who was the Firm's in-house book keeper and accountant, and would have personal knowledge

6

of all aspects of the subject bank accounts; Demonic Cedrone, who worked in the Firm's accounting department and would have personal knowledge of the subject bank accounts and the alleged mishandling of funds; Andrea Turnbull, who worked in the Firm's accounting department and would have personal knowledge of the subject bank accounts and the alleged mishandling of funds; and numerous other persons who worked in the firms accounting and billing departments, who would have personal knowledge of the Firm's accounts.

48.     Further, attorneys, paralegals and other employees, who actually worked on and managed Ocwen's case files, including cases concerning Florida, from the Firm's Massachusetts office would be necessary witnesses, and most if not all such paralegals and other employees are believed to be domiciliaries of Massachusetts included are attorneys Walter Porr, Menina Cohen and Michael Bruning.

49.     Also, the vast majority of the voluminous relevant evidence and sources of proof, including computer servers and paper files are located within the Commonwealth of Massachusetts.

50.     Those records consist of several hundred "banker's Boxes" worth of documents, and those materials are located in Foxboro, Massachusetts[1].

51.     I have been informed that those of the Firm's computer servers that are in Massachusetts are presently under subpoena by the Board of Bar Overseers and a single computer server is under the control of a court appointed receiver in upstate New York.

52.     As all of the material witnesses and evidence are within the Commonwealth of Massachusetts, trying the matter in any Court other than the District Court of Massachusetts will

---

[1]  The subject records are in the possession of a bankruptcy trustee, who is also located in Massachusetts.

be certain to greatly and improperly increase the cost and inconvenience of litigating the present matter for parties and witnesses.

53.     Similarly, there would be extensive practical problems in trying the matter in Florida; thus, litigating the matter in Massachusetts would be far less expensive and more expeditious.

54.     I have not been employed since May of this year and am attempting to revive my private practice.

55.     I do not presently have the financial means or ability to travel to Florida to participate in litigation in that forum.

56.     Ocwen has alleged that its funds were wrongfully comingled, misappropriated, misused and/or converted prior to August 28, 2013.

57.     From the time that I became a minority shareholder in the Firm in April 2013 through late October, 2013, I was not an officer, director or manager of the Firm.

58.     At no time from the date I became a minority shareholder in the Firm up through the present time have I had control of or signatory authority over any accounts of the Firm from and or related to which Ocwen alleges it funds were wrongfully comingled, misappropriated, misused and/or converted.

59.     Ocwen has not alleged, and the affidavit it presents and relies upon in support of its opposition abjectly fails to include, any evidence which support any of the many allegation and factual conclusions repeated over and over in it memorandum including but not omitted to the following:

8

. The unsubstantiated allegations repeated as a mantra throughout Ocwen's Opposition that I was a contact , manager etc of Ocwen's files in Fl or anywhere is not even support by their own affidavit and is with any good faith knowledge or information.

60.    As one of 2 attorneys in the newly acquired and created civil litigation department of the Firm my time was devoted to providing civil legal services to the clients of C&G and to attempting to develop civil litigation clients for the Firm.

61.    As the manager of Connolly and Geaney, I spent my time dealing with C&G's client and civil litigation matter relating to the Firm but unrelated to the Firm's default services clients.

62.    I never provided any legal services to any of default services clients of the Firm including without thereby limiting the generality of the foregoing Ocwen.

63.    I was neither an officer nor a director of the Firm at any point in time when the alleged misuse of funds occurred.

64.    On information and belief, Ocwen has active business locations in Massachusetts.

65.    If Ocwen was damaged by any of the alleged actions of myself and/or any of the other named defendants, it was damaged where ever it does business, including Massachusetts, not just in Florida.

66.    On November 4, 2014, legal counsel for Ocwen filed a Motion for Relief of the Bankruptcy Stay in the Bankruptcy Court in Boston, Massachusetts expressly request that the Court grant Ocwen relief from the bankruptcy stay in a pending case styled *IN RE: CONNOLLY, GEANEY, ABLITT & WILLARD, P.C. Debtor Case No. 14-14164, Chapter 7,*

The express relief that Ocwen has requested in its pending motion is that the Court

9

"Grant Ocwen relief from the automatic stay under section 362(d) of the Bankruptcy Code to allow Ocwen to request the Florida District Court to transfer the Florida Litigation in its entirety to this Court for adjudication on all claims"

67.     In July 2013, Ocwen's counsel of record and an in-house counsel met with me, Mr. Kevin Geaney and Mrs. Rachelle Willard in the Firm's offices in Woburn, Massachusetts and I, Mr. Geaney and Ms. Willard described in full detail the circumstances and time of the misuse of Ocwen's fund including our total lack of knowledge of the actions until after they were completed and that none of us were officers or directors of the Firm until late in October. We also made it clear that none of us had any knowledge of the Firms IOLTA account or the comingling, misuse and conversion of the funds and that none of us were officers or directors or managers of the Firm in that time period.

68.     From long before the date that I became a shareholder in A/S through the end of February, Mr. Robert Feige was the chief financial and chief operating officer of the Firm he was in total control of the Firms accounting, employment, pay rates, bonuses, fund and operations in all of the Firms locations.

69.     I did not participate in the alleged misuse of funds alleged by Ocwen; I was not aware of any such alleged misuse at the time of the alleged occurrence; and I did not receive or authorize any alleged bonuses using such funds.

70.     The Florida office had its own managing attorney responsible for the oversight of Florida cases.

71.     I did not participate in the alleged misuse of funds alleged by Ocwen; I was not aware of any such alleged misuse at the time of the alleged occurrence; and I did not receive or authorize any alleged bonuses using such funds.

Signed under the pains and penalties of perjury this 10th day of November 2014.

JOHN CONNOLLY, JR.